UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HANIEH ALSADAT HEDAYATI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JOSEPH B. EDLOW,<br><br>Defendant. | Case No. 26-cv-04054-VKD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO STAY PROCEEDINGS**<br><br>Re: Dkt. Nos. 9, 22 |

In this immigration mandamus action, plaintiffs move for a preliminary injunction. *See* Dkt. Nos. 9, 17. Defendant Joseph B. Edlow, sued in his official capacity as the Director of the United States Citizenship and Immigration Services ("USCIS"), opposes that motion. Dkt. No. 15. The government separately moves to stay these proceedings in view of *Dorcas Int'l Inst. of Rhode Island v. U.S. Citizenship & Immgr. Servs.*, — F. Supp. 3d —, No. 26-cv-132-JJM-PAS, 2026 WL 1622708 (D.R.I. June 5, 2026) and pending developments in that litigation. Dkt. No. 22. Plaintiffs oppose the government's motion for a stay. Dkt. No. 23. On July 6, 2026, and at the Court's direction, plaintiffs filed a supplemental chart containing information regarding the status of plaintiffs' claims. Dkt. No. 29.[1]

Upon consideration of the moving and responding papers, as well as the oral arguments

---

[1] Although the supplemental chart was intended to be a joint filing, plaintiffs advise that, due to plaintiffs' counsel's limited availability, the parties were unable to confer on a final version of the chart. Accordingly, plaintiffs state that the supplemental chart "is the best representation of the parties' agreement at this time." Dkt. No. 29 at 1.

presented at the June 30, 2026 hearing, the Court grants in part and denies in part plaintiffs' motion for a preliminary injunction and denies without prejudice the government's motion to stay these proceedings.[2]

## I.  BACKGROUND

Plaintiffs are 137 foreign nationals of 15 countries, including Afghanistan, Burma (Myanmar), Cote d'lvoire, Cuba, Haiti, Iran, Malawi, Nigeria, Senegal, Sudan, Syria, Togo, Turkmenistan, Venezuela, and Yemen.  Dkt. No. 1.  On May 4, 2026, plaintiffs filed the present action for a writ of mandamus, claiming that USCIS has unreasonably delayed adjudication of their I-765 Applications for Employment Authorization ("I-765 applications"), based on USCIS's December 2, 2025 Policy Memorandum (PM-602-0192) and January 1, 2026 Policy Memorandum (PM-602-0194) (collectively, "Policy Memoranda").  *See* Dkt. Nos. 1-3, 1-4.  The Policy Memoranda placed an apparently indefinite hold on pending benefit applications from nationals of 39 countries designated as "high risk."  *See id*.  Claiming that such withholding of adjudication is unlawful, plaintiffs filed the present action to enjoin the hold and to compel USCIS to adjudicate their I-765 applications.  *See* Dkt. No. 1.  Plaintiffs seek a writ of mandamus, 28 U.S.C. § 1361, and assert claims for violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555, 706, as well as violation of the due process and equal protection clauses of the Fifth Amendment of the U.S. Constitution.  *See id*.

Plaintiffs now move for preliminary injunctive relief, arguing that the adjudication of their I-765 applications is essential to their ability to work, maintain their nonimmigrant statuses, and sustain their livelihood in the United States.  They seek an order (1) enjoining USCIS from applying the Policy Memoranda to their pending I-765 applications and (2) requiring USCIS to adjudicate their I-765 applications and "deliver Employment Authorization Documents to eligible plaintiffs within 30 days."  *See* Dkt. No. 9-5.  The government opposes plaintiffs' motion on several grounds, arguing that (1) the Court does not have jurisdiction over plaintiffs' claims; (2) plaintiffs located outside this District are misjoined and should be dismissed due to improper

---

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 7, 13.

United States District Court
Northern District of California

venue; (3) plaintiffs' motion improperly seeks the final relief sought in their complaint, namely a mandatory permanent injunction on the merits; and (4) plaintiffs have not established that they are entitled to preliminary injunctive relief in any event.

On June 5, 2026, while the present motion for preliminary injunction was being briefed, the U.S. District Court for the District of Rhode Island issued an order vacating and setting aside the same Policy Memoranda at issue, finding that they violate the APA. *See Dorcas Int'l Inst. of Rhode Island v. U.S. Citizenship & Immgr. Servs.*, — F. Supp. 3d —, No. 26-cv-132-JJM-PAS, 2026 WL 1622708 (D.R.I. June 5, 2026).

Between June 12, 2026 and the June 30, 2026 hearing on their preliminary injunction motion, several plaintiffs voluntarily dismissed their claims. *See* Dkt. Nos. 19-21, 25. At the motion hearing, plaintiffs' counsel confirmed that those voluntary dismissals concern plaintiffs whose I-765 applications have been adjudicated, although he noted that some of the plaintiffs whose applications were approved had not yet received their employment authorization cards. *See* Dkt. No. 26. Additionally, at the motion hearing, the government's counsel stated that USCIS adjudicated and approved 54 additional I-765 applications, such that only 74 of the original 137 plaintiffs still had pending applications. *See id.* Following the motion hearing, five more plaintiffs voluntarily dismissed their claims. *See* Dkt. No. 28. According to the July 6, 2026 supplemental status chart, there are approximately 37 remaining plaintiffs who have pending I-765 applications that USCIS has not yet adjudicated. *See* Dkt. No. 29.

## II.    LEGAL STANDARD

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Plaintiffs seeking preliminary injunctive relief must establish that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *Id.* at 20. If plaintiffs "can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in

United States District Court
Northern District of California

[their] favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (quotation modified; citations omitted).

## III.    DISCUSSION

### A.    Subject Matter Jurisdiction

The government principally contends that plaintiffs challenge discretionary agency decisions that are shielded from judicial review under the Immigration and Nationality Act. *See* Dkt. No. 15 at 18-21.[3] Specifically, the government argues that this Court's review of plaintiffs' claims is barred by 8 U.S.C. § 1252(a)(2)(B)(ii), which provides, in relevant part, that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . .." Additionally, the government argues that the Court lacks jurisdiction over plaintiffs' APA claims because judicial review under the APA extends only to "final agency actions" that are "committed to agency discretion by law." *See* Dkt. No. 15 at 21-23; *see also* 5 U.S.C. § 701(a)(1)-(2); 5 U.S.C. § 704. The government contends that the Policy Memoranda are not final agency actions, and that USCIS has not failed to comply with a mandatory duty.

This very issue of jurisdiction has been well-vetted by other courts in similar litigation in this District and across the country. At the motion hearing, the government stated that it had no arguments or authorities to add beyond those that the parties have already presented to the Court. The Court agrees with the reasoning of those courts that find that USCIS has a non-discretionary duty to adjudicate immigrant benefit applications within a reasonable period of time; that courts have jurisdiction to review USCIS's failure to do so; and that the Policy Memoranda are sufficiently "final" for purposes of APA review. *See, e.g., Jamdar v. Edlow*, No. 5:25-cv-11002-BLF, 2026 WL 1763856, at *2-*3 (N.D. Cal. June 18, 2026); *Choupanzadeh v. Mullin*, No. 26-cv-0277-SM-TSM, 2026 WL 1724398, at *3-*4 (D.N.H. June 15, 2026); *Dorcas*, — F. Supp. 3d —, 2026 WL 1622708, at *11-*16, *22-*28; *Doe v. Trump*, No. 1:25-cv-13946-JEK, 2026 WL

---

[3] With respect to filed documents, pin citations refer to the page number appearing on the ECF header for each document.

United States District Court
Northern District of California

1170971, at *6-*10 (D. Mass. Apr. 30, 2026); *Meschi v. Edlow*, No. 26-cv-01993-AGT, 2026 WL 1157151, at *1 (N.D. Cal. Apr. 29, 2026); *Behdin v. Edlow*, No. 26-cv-00566-SVK, 2026 WL 1031079, at *5-*11, *18-*20 (N.D. Cal. Apr. 16, 2026); *Bowser v. Noem*, No. 26-cv-10382-AK, 2026 WL 555624, at *3-*6 (D. Mass. Feb. 27, 2026); *Varniab v. Edlow*, No. 25-cv-10602-SVK, 2026 WL 485490, at *5-*11, *16-*17 (N.D. Cal. Feb. 20, 2026).

Accordingly, the Court concludes that it has jurisdiction over plaintiffs' claims.

### B.    Joinder and Venue

There is no dispute that the vast majority of plaintiffs reside outside the Northern District of California, and that many of the plaintiffs live in states other than California. *See* Dkt. No. 1; Dkt. No. 9-1. The government contends that plaintiffs who are outside this District are misjoined. Relatedly, it argues that, in view of their misjoinder, the out-of-district plaintiffs should be dismissed for improper venue pursuant to Rule 12(b)(3). *See* Dkt. No. 15 at 15-18.

Rule 20 permits plaintiffs to join together in one action if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). "Misjoinder of parties is not a ground for dismissing an action," but "the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Where the requirements for permissive joinder are not met, "the district court may sever the misjoined plaintiffs, as long as no substantial right will be prejudiced by the severance." *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). Even where the Rule 20 requirements for permissive joinder are satisfied, "a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side.'" *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (quoting *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)).

In *Coughlin*, the Ninth Circuit affirmed the district court's finding of misjoinder, where (among other things) the plaintiffs "d[id] not allege that their claims ar[ose] out of a systematic pattern of events," and "d[id] not allege a pattern or policy of delay in dealing with all applications." *Coughlin*, 130 F. 3d at 1350. In the present action, each of the plaintiffs claims to

United States District Court
Northern District of California

have been adversely affected by the same two Policy Memoranda imposing a hold on their I-765 applications. To that extent, plaintiffs' claims arise out of the same transaction or occurrence, and thus meet the first prong of the permissive joinder test. *See Coughlin*, 130 F.3d at 1350 ("The first prong, the 'same transaction' requirement, refers to similarity in the factual background of a claim."). Additionally, to the extent that each of the plaintiffs claims that the hold imposed by the Policy Memoranda constitutes an unlawful withholding of adjudication under the APA and seeks relief in the form of an injunction enjoining that hold, that is a common question of law that meets the second prong of the permissive joinder test.[4] Indeed, at the motion hearing, the government did not dispute that the hold imposed by the Policy Memoranda, and plaintiffs' request for injunctive relief with respect to the hold, is sufficient for joinder, assuming that at least one of the plaintiffs is in this District. *See* Dkt. No. 26; *see also, e.g., Abdulraheemzai v. Noem*, No. 25-cv-05098-JST, 2026 WL 1113722, at *13-*!4 (N.D. Cal. Apr. 24, 2026) (denying motion to sever plaintiffs challenging the same policy memorandum pausing asylum application processing); *Wang v. Edlow*, No. 25-cv-10689-SVK, 2026 WL 1021204, at *9 (N.D. Cal. Apr. 15, 2026) (finding all but two plaintiffs properly joined where they alleged a "common pattern of delay" due to an "unexplained 'collapse' in adjudication of application in the third quarter of 2025," as such "allegations sound in the sort of 'systematic pattern of delay' recognized in *Coughlin* as an important, common fact.") (quotation modified); *City & Cnty. of San Francisco v. Trump*, No. 25-cv-01350-WHO, 2025 WL 2243619, at *8 (N.D. Cal. Aug. 5, 2025) (permitting joinder of additional plaintiffs, including cities outside California, who "challenge the constitutionality of Executive Orders threatening *all* their federal funding upon pain of conforming to federal immigration policy," as "[t]he reasons for their injury are common" and "[t]he source of their injury arose at the same time for each of them."). As demonstrated by the July 6, 2026 status chart, several of the remaining plaintiffs are in this District. *See* Dkt. No. 29; *see also* Dkt. No. 1;

---

[4] As discussed below, for purposes of evaluating joinder, the Court finds a significant distinction in this case between the withholding of adjudication fied the alleged unreasonable delay in adjudication of plaintiffs' I-765 applications. *See generally Behdin*, 2026 WL 1031079, at *13 ("'The distinction between agency withholding and delay is important.'") (quoting *Al Otro Lado v. Exec. Off. For Immgr. Rev.*, 138 F.4th 1102, 1120-21 (9th Cir. 2025)).

Dkt. No. 9-1. Accordingly, the Court declines to sever or dismiss any plaintiff insofar as all plaintiffs challenge the hold imposed by the Policy Memoranda. *See* 28 U.S.C. § 1391(e)(1) (providing that venue is proper "in any judicial district in which . . . the plaintiff resides."); *Wang*, 2026 WL 1021204, at *2 ("Unlike some other venue provisions, Section 1391(e)(1) provides that venue is proper in a multi-plaintiff case if any plaintiff resides in the District.") (quotation modified; citation omitted); *City & Cnty. of San Francisco*, 2025 WL 2243619, at *6 (same).

However, beyond their common challenge to the hold imposed by the Policy Memoranda, plaintiffs have not demonstrated that they meet the requirements for permissive joinder. Plaintiffs have not shown similarity in the factual background of their claims. According to their own allegations, plaintiffs "hold various nonimmigrant statuses and have filed I-765 applications under multiple eligibility categories, including but not limited to pending family- and employment-based adjustment of status ('AOS'), Optional Practical Training ('OPT'), National Interest Waiver ('NIW'), Temporary Protected Status ('TPS') and Asylum." Dkt. No. 1 ¶ 6. As demonstrated by their declarations filed in support of the present motion, plaintiffs are in vastly different personal circumstances. The record presented indicates that while one plaintiff filed an I-765 application more than a year before the present lawsuit, others filed their applications months before the lawsuit was filed, and still others filed their I-765 applications only a few weeks or days before the complaint was filed. *See* Dkt. Nos. 15-1, 15-2. For some plaintiffs, the work authorization period has not yet expired; for others, the work authorization period has already lapsed. For still others, namely those proceeding under OPT status, the complaint states that they receive an automatic 180-day extension of the work authorization period; and, at the hearing, plaintiffs' counsel suggested that particular consideration should be given to timing concerns specific to plaintiffs in OPT status. *See* Dkt. Nos. 1, 9-1, 26. As claims of unreasonable delay ultimately depend on analysis of the so-called *TRAC*[5] factors, *see Vaz v. Neal*, 33 F.4th 1131, 1137 (9th Cir. 2022), each plaintiff's claim of unreasonable delay presents "a different factual situation" requiring "personalized attention by [USCIS] and, ultimately, by the Court." *Coughlin*, 130 F.3d at 1351.

---

[5] *See Telecomms. Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 75 (D.C. Cir. 1984).

United States District Court
Northern District of California

On the record presented, plaintiffs have not demonstrated that there are common issues of fact or law on the issue of unreasonable delay. *See id.*

Even if plaintiffs could satisfy the permissive joinder criteria for their claims of unreasonable delay, the sheer volume of plaintiffs in this action presents serious concerns in terms of the parties' ability to properly advocate for their respective clients and make the showing required on an individualized basis as to each plaintiff. As noted at the motion hearing, the parties' preliminary injunction arguments are presented at a high level, and are largely directed to the plaintiffs, collectively, as a whole. The government's counsel stated that in view of the number of plaintiffs involved, and due to briefing limitations, he was unable to present more detailed arguments with respect to each plaintiff. Joinder of all plaintiffs in one action also presents a challenge to the Court's ability properly manage this litigation and provide meaningful evaluation of each plaintiff's claims. Indeed, at the motion hearing, plaintiffs acknowledged that for purposes of proper joinder, the one common thread that ties them together is the hold imposed by the Policy Memoranda. They further acknowledged that there may well be a time when it would be appropriate for the Court to consider severing plaintiffs or dismissing their claims due to misjoinder and improper venue. But plaintiffs maintain that now is not the time do so, given the uncertainty regarding proceedings in *Dorcas*.

As noted above, and as argued in the government's motion to stay these proceedings, the hold imposed by the Policy Memoranda has been vacated and set aside in *Dorcas*. However, proceedings in *Dorcas* continue to develop, as the government has appealed that district court's decision, and also filed a motion to stay that decision pending the appeal. *See* Dkt. No. 22. Because those matters continue to unfold, the Court declines to stay the present action at this time. The government's motion to stay these proceedings is denied without prejudice.

Based on the foregoing, and for purposes of resolving the present motion for preliminary injunction, the Court finds that the plaintiffs properly are joined insofar as they challenge the hold on the adjudication of their I-765 applications and seek injunctive relief with respect to that hold. It is on that basis that the Court proceeds with analysis of plaintiffs' motion for preliminary injunctive relief. For the reasons discussed below, plaintiffs' motion for a preliminary injunction

is granted in part and denied in part.

### C.    Preliminary Injunction

#### 1.    Likelihood of Success

For the same reasons supporting the Court's exercise of jurisdiction (as discussed above), plaintiffs have shown a likelihood of success on their claim challenging the Policy Memoranda's hold as "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" under the APA, 5 U.S.C. § 706(2)(A).  *See Sunny-Odio v. Trump*, No. 26-cv-04816-RFL, 2026 WL 1763854, at *1 (N.D. Cal. June 18, 2026); *Choupanzadeh*, 2026 WL 1724398, at *4; *Dorcas*, 2026 WL 1622708, at *22-*26, *47-*54; *Meschi*, 2026 WL 1157151, at *1; *Behdin*, 2026 WL 1031079, at *18-*22.  As plaintiffs have shown a likelihood of success on one of their claims for relief under the APA, their other claims need not be addressed.  *See Sunny-Odio*, 2026 WL 1763854 at *1.

#### 2.    Irreparable Harm

Plaintiffs have demonstrated irreparable harm through declarations describing the adverse impacts of being precluded from lawful employment, including loss or setbacks in their professional training and/or career development, inability to meet financial and family obligations, inability to engage in family planning, as well as stress due to the uncertainty of their future in the United States.  *See* Dkt. No. 9-1.  As noted above, plaintiffs have not suffered the same harm or the same degree of harm.  However, courts have recognized that the loss of work authorization itself—which all plaintiffs face—goes beyond ordinary economic injury and constitutes irreparable injury weighing in favor of preliminary injunctive relief.  *See Sunny-Odio*, 2026 WL 1763854, at *1-2; *Choupanzadeh*, 2026 WL 1724398, at *4-*5; *Meschi*, 2026 WL 1157151, at *2; *Saghafi v. Edlow*, No. GLR-26-100, 2026 WL 1127468, at *11-*14 (D. Md. Apr. 24, 2026); *Behdin*, 2026 WL 1031079, at *24-*25; *Bowser*, 2026 WL 555624, at *9; *Varniab*, 2026 WL 485490, at *22-*23.

While the government emphasizes that *Dorcas* vacated and set aside the hold imposed by the Policy Memoranda, the status and effect of *Dorcas* is in flux, as proceedings in that litigation continue to unfold.  Courts have found irreparable harm, notwithstanding the issuance of an

United States District Court
Northern District of California

United States District Court
Northern District of California

injunction by another court in similar or parallel litigation. *See, e.g., Sunny-Odio*, 2026 WL 1763854, at *2 ("Even though the Policy Memoranda and Policy Alert were vacated in *Dorcas*, Sunny-Odio still faces imminent harm, because of the uncertainty that remains as to whether that ruling will be stayed or overturned on appeal."); *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 60 (D.D.C. 2020) ("[C]ourts routinely grant follow-on injunctions against the Government, even in instances when an earlier nationwide injunction has already provided plaintiffs in the later action with their desired relief."); *California v. Health & Hum. Servs.*, 390 F. Supp. 3d 1061, 1065-66 (N.D. Cal. 2019) ("[O]verlapping injunctions appear to be a common outcome of parallel litigation . . . . The Court concludes that the existence of another injunction—particularly one in a different circuit that could be overturned or limited at any time—does not negate Oregon's claimed irreparable harm."). Accordingly, the Court is not persuaded that *Dorcas* precludes or counsels against a finding of irreparable harm or the issuance of an injunction in the present action.

### 3. Balance of Equities and the Public Interest

These final two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiffs argue that the balance of equities and the public interest weigh in favor of preliminary injunctive relief because the requested remedy is limited to an order requiring USCIS to adjudicate their I-765 applications within 30 days. They further argue that such relief supports the "public's interest in maintaining a system of laws where the Government must comply with its legal obligations," and by permitting the plaintiff-physicians and other professionals to enter and maintain lawful employment and apply their skills and services in the U.S. workforce. *See* Dkt. No. 9 at 31; Dkt. No. 17 at 22. The government contends that a preliminary injunction is contrary to the public interest, as plaintiffs' request for an order requiring adjudication of their I-765 applications in 30 days is arbitrary and "would merely place [them] ahead of other applicants" in the ordinary course of processing applications absent the hold. Dkt. No. 15 at 33. Relatedly, the government argues that plaintiffs' requested preliminary injunction improperly seeks the final relief sought in their complaint, namely a mandatory permanent injunction compelling USCIS to adjudicate their I-765 application within 30 days. *See*

*id.* at 15.  In their reply, plaintiffs argue that granting their requested preliminary injunctive relief will merely "put [them] back [in] the queue, if one exists, not further back in the queue dictated by the Policy [Memoranda]."  Dkt. No. 17 at 22.

While "'[t]here is generally no public interest in the perpetuation of unlawful agency action,'" *Am. Assoc. of Univ. Professors v. Trump,* 815 F. Supp. 3d 907, 976 (N.D. Cal. 2025); *Sunny-Odio*, 2026 WL 1763854, at \*2 (same), the government is correct that the purpose of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits, *see Meschi*, 2026 WL 1157151, at \*2 (citing *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963)).  In the present action, the Court agrees with those courts that conclude that the "'the status quo consist[s] of the usual, though sometimes prolonged, processing and adjudication of Forms [I-765] within a reasonable time and without an adjudicatory hold in place.'"  *Id.*, 2026 WL 1157151, at \*2 (quoting *Saghafi*, 2026 WL 1127468, at \*15).  Plaintiffs have not cited cogent legal authority or persuasively argued that a 30-day adjudication deadline is consistent with the status quo absent the hold imposed by the Policy Memoranda.  Even with respect to those plaintiffs who paid a premium processing fee, plaintiffs acknowledged at the motion hearing that the USCIS regulation governing such fees does not guarantee adjudication within 30 days, or even within the 30 business-day timeframe for I-765 applications stated in the regulation, 8 C.F.R. § 106.4(e)(21).  *See Duenas v. Mayorkas*, No. 24-cv-0464 (TSC), 2025 WL 1927976, at \*3 (D.D.C. July 14, 2025) ("the [premium processing] service guarantees that USCIS will either 'issue an approval notice, denial notice, a notice of intent to deny, or a request for evidence within the premium processing timeframe'—not that the agency will affirmatively deny or approve the application within [the stated timeframe].") (quoting 8 C.F.R. § 106.4(f)(1)); *see also Behdin*, 2026 WL 1031079, at \*14 ("Given the option for USCIS to refund the premium processing fee, arguably the program is not a guarantee that an applicant who pays the fee will receive adjudication of their I-765 application.").

In these circumstances, the Court concludes that an injunction prohibiting application of the hold imposed by the Policy Memoranda and directing USCIS to put plaintiffs back in the "normal queue" best balances the equities and serves the public interest.  *See Sunny-Odio*, 2026

United States District Court
Northern District of California

WL 1763854, at *2; *see also Meschi*, 2026 WL 1157151, at *2 ("Plaintiffs may argue on summary judgment that, even without the hold, the processing times are unreasonable, *see* Immigration Mandamus Case Procedural Order, Dkt. 4 (setting a summary judgment schedule), but Plaintiffs need to give USCIS an opportunity to adjudicate their I-765s without the hold first."). This ruling is without prejudice to plaintiffs to make a more particularized showing why adjudication by USCIS within a period other than the normal course is warranted as to specific plaintiffs.

As the government has not requested a bond, nor established that the government is likely to suffer damages from the injunction, no bond will be required under Rule 65(c). *See Sunny-Odio*, 2026 WL 1763854, at *2; *Behdin*, 2026 WL 1031079, at *27.

## IV.  CONCLUSION

For the reasons stated above, the government's motion to stay these proceedings is denied without prejudice, and plaintiffs' motion for a preliminary injunction is granted in part and denied in part. USCIS is enjoined from applying the hold imposed by the Policy Memoranda to any I-765 application filed by any plaintiff. To the extent it has not already done so, USCIS must resume adjudicating the remaining plaintiffs' I-765 applications in a manner consistent with USCIS's non-hold policies. *See* Dkt. No. 15 at 26 (representing that "USCIS generally adjudicates I-765 applications in the order they are received").

By **July 14, 2026** defense counsel shall file a status report confirming that this order has been communicated to USCIS and that the remaining plaintiffs' applications are currently being adjudicated in a manner consistent with USCIS's processes absent the enjoined policies.

**IT IS SO ORDERED.**

Dated: July 7, 2026

Virginia K. DeMarchi
United States Magistrate Judge

12